## Anson J. Stone *vs.* City of Boston.

The mayor and aldermen of Boston cannot legally lay out a street, without first giving to all persons interested notice of their intention so to do.

Where the mayor and aldermen laid out a street over land belonging to minors, without giving any previous notice, and without making any estimate of the amount of damage thereby sustained by the owners, and more than a year elapsed before either of the owners came of age; a writ of *certiorari* was ordered, on a petition filed by one of the owners at the first term after he came of age, although notice had been given to the tenant in possession to remove the buildings from the land, and he had communicated that notice to the guardian of said minors within a year after the street was thus laid out.

This was a petition for a writ of *certiorari*, presented at the November term 1839.

The petitioner alleged that the mayor and aldermen of the city, at a meeting held on the 8th of November, 1836, passed a resolve, that the safety and convenience of the inhabitants required that Fulton Street should be extended northerly to a passage way leading from Ann Street to Commercial Street ; that they, for that purpose, laid out about three thousand square feet of land belonging to the petitioner and his brothers and sister, as tenants in common ; and that, in the year 1837, they cut down and removed several buildings then on said land ; that the petitioner and his brothers and sister, the owners of said land, were, at the times of said proceedings, minors under the guardianship of Rufus Fiske, and that the petitioner was a minor and under said guardianship, until the 28th of June, 1839 ; that said mayor and aldermen gave no notice, either before or at the time of passing said resolve and extending said street, to said guardian or to any person interested, of their proceedings in the premises, or of their intention to determine upon the common convenience and necessity of extending said street.

On the hearing of this petition, the records of the proceedings of the mayor and aldermen were introduced, and it appeared therein that said street was extended, on the petition of John Binney and others ; but it did not appear that notice had ever been given to any party interested in the land mentioned in the petition, or that any damages had been awarded to the owners

thereof. The tenant, who had possession of the buildings, under a demise from Fiske, guardian of the owners, testified that when the mayor and aldermen were about opening the street, he was warned to remove the buildings in thirty days ; that he informed Fiske, the guardian, who said he had received no notice ; and that one of the aldermen said he had nothing to do v ith the guardian, and that when the minors came of age, they would be attended to. Said tenant received his damages from the city, in 1838, by agreement between him and the city authorities.

It was proved that the petitioner was twenty-one years old in June, 1839.

The case was argued at the close of March term 1840.

*J. Pickering*, (City Solicitor,) for the respondents. Before *St.* 1835, *c.* 122, it was not necessary that selectmen should give notice to owners of land over which a *town way* was laid out, before laying out the way. *Copeland* v. *Packard*, 16 Pick. 217. Nor is it necessary that there should be an adjudication that a town way is of common convenience and necessity, before land can be taken therefor ; *Jones* v. *Andover*, 9 Pick. 154 ; nor that damages, sustained by the owner of the land, should be assessed when the way is laid out. *Cragie* v. *Mellen*, 6 Mass. 7.

When the street in question was extended, the mayor and aldermen had, by the city charter, (*St.* 1821, *c.* 110, § 13,) the same power as to laying out streets, which before belonged to the selectmen of Boston, either by the general laws, or by par ticular laws relative to the powers and duties of said selectmen or by the votes, by-laws, &c. of the town of Boston. By " par ticular laws," viz. *St.* 1799, *c.* 31, (2 Special Laws, 338,) and *St.* 1804, *c.* 73, (3 Special Laws, 506,) the selectmen of Boston were empowered to lay out, &c. any new street, &c. and for that purpose to take any land that might be required for the same, and to remove any building, &c.; and by the latter statute, it was provided that the same street, &c. " being recorded in the town's books," should be thereby established as such, and the owner of the land or buildings, that should be so taken or removed, should receive such recompense for the damages, &c.

as the party interested and the selectmen should agree upon, or as should be ordered by the justices of the general sessions of the peace, upon an inquiry into the same by a jury. By the Rev. Sts. *c.* 15, § 86, " the city of Boston shall continue to have and exercise all the powers and privileges, &c. mentioned in the act " (*St.* 1821, *c.* 110,) " establishing the city of Boston, and in the several acts specially relating to said city." And the *St.* of 1804, *c.* 73, is not in the list of repealed acts, which is appended to the revised statutes, pp. 813–834. By Rev. Sts. *c.* 24, § 55, a petition for a jury to assess damages, &c. must be made to a term of the court of common pleas held " *within one year* after the laying out, &c. of any way in said city." The petitioner had an opportunity to apply for his damages, within a year after the laying out of the street. The Rev. Sts. *c.* 24, § 67, allow notice to be given to the owner of the land, or to his *tenant* or authorized agent. The tenant, in this case, had notice, and received *his* damages. And as the petitioner's guardian had notice from the tenant, he should have applied for damages for his wards.

*Aylwin & Choate*, for the petitioner. By the Rev. Sts. *c.* 24, §§ 54, 55, the mayor and aldermen have the like powers and duties as those of the commissioners of other counties, in respect to the laying out, &c. of ways, and assessing damages therefor, except that persons aggrieved by their doings may apply for a jury, by petition to the court of common pleas in the county of Suffolk. The duties of county commissioners, as to notice to parties, are prescribed by the first four sections of the same chapter, and §§ 67 – 69 provide for different notice, in case of town ways, from that which was required by former statutes. By § 55, application for a jury must be made by a party aggrieved within one year after the laying out, &c. of a way, and not afterwards.

These provisions conclusively show that the proceedings of the mayor and aldermen were unwarranted, and that the petitioner has no remedy, except by quashing them.

The powers and privileges reserved to the city, by Rev. Sts. *c.* 15, § 86, are its corporate powers only ; not the particular

powers which before belonged to, or were exercised by, the officers of the city.

In *Commonwealth* v. *City of Boston*, 16 Pick. 445, it was held that streets in Boston are highways, and not like town ways in other places. See *Commonwealth* v. *Chase*, 2 Mass. 170. *Commonwealth* v. *Cummings*, 2 Mass. 171. *Harlow* v. *Pike*, 3 Greenl. 438. *Parks* v. *Boston*, 8 Pick. 221.

The Rev. Sts. *c.* 24, §§ 10, 11, require that a return shall be made of the laying out of a highway, and an estimate of the damages sustained thereby, by owners of property, stated in such return. The record, in this case, shows no return, except that the street was extended and laid out by certain metes and bounds.

DEWEY, J. This is a petition for a writ of *certiorari* to the mayor and aldermen of the city of Boston, requiring them to return to this court the record of their proceedings on the petition of John Binney and others, praying to have Fulton Street extended northerly. The petitioner represents, that the said mayor and aldermen proceeded to act upon said petition for the extension of the said street, adjudicated that the safety and convenience of the inhabitants of said city of Boston required the granting of the prayer of said petition, and proceeded to lay out the same, taking for this purpose the land of the present petitioner, and cutting down and removing his buildings thereon standing. The petition further states that the said Stone was then, and for a long time afterwards, a minor, under guardianship, and that the said mayor and aldermen did not, before or at the time of acting upon the petition to extend Fulton Street northerly, and adjudicating that the safety and convenience of the said city required this extension, and ordering the same to be done, give notice to the said Stone or his guardian, of the said petition, or of any proposed action by the mayor and aldermen on the subject matter thereof.

Two questions arise in the present case. 1. Supposing the allegations of the petitioner to be true, would the acts of the mayor and aldermen, if now before us, on a writ of *certiorari*, be so far defective as to require the proceedings to be quashed ?

2. Are there any facts disclosed in the case, either by the peti-
tioner or by the respondents, which will authorize this court, in
a case peculiarly addressed to the sound discretion of the court,
to deny this application for a writ of *certiorari* ?

The first inquiry necessarily requires an examination of the
authority under which the mayor and aldermen act in laying out
and widening streets in this city. In tracing the origin of the
power given by the legislature to locate town ways, it will be
found to have been given in very general terms, in *St.* 1785,
*c.* 75, § 7, authorizing towns to approve of ways laid out by
the selectmen.

The *St.* of 1786, *c.* 67, enacted a system much more ex
tended in its provisions, but of the same general charac ter;
empowering selectmen of towns to lay out town ways subject
to be approved by a vote of the town at a legal meeting of
the inhabitants ; and providing that the damages occasioned by
the location of the way might be agreed upon by the party in-
jured and the selectmen, or if not thus agreed, such sum should
be paid as should be ordered by the justices of the general ses-
sions, upon inquiry before a jury. By *St.* 1799, *c.* 31, § 3, the
provisions above stated, which had, until that period, applied as
well to Boston as to the other parts of the Commonwealth, were
altered, and the power was vested in the selectmen of Boston,
to lay out and widen streets — requiring no confirmation or ap-
probation of the town, to give effect to their doings ; but leaving
the subject of damages to be determined in the manner pre-
scribed by the *St.* of 1786, *c.* 67. To this act succeeded the
statutes of 1804, *c.* 73, and 1809, *c.* 28 ; retaining, however,
the same provision, as to the authority of the selectmen of Bos-
ton to lay out streets ; the statute of 1804 providing as follows :
" And the same street, lane or alley, being recorded in the
town's books, shall be thereby established as such." And such
continued to be the authority under which streets and ways were
laid out and widened, or extended, until the period of the change
from a town organization to that of the city government.

The act establishing the city of Boston, *St.* 1821, *c.* 110,
§ 13, conferred upon the mayor and aldermen all the powers

and the like duties, which had before devolved upon the select-men, in relation to this subject.

The effect of these statutes, and the extent of the change, in-troduced through them, in the powers of those authorized to lay out streets and ways, were somewhat considered in the case of *Commonwealth* v. *City of Boston*, 16 Pick. 442 ; and, in the opinion of the court in that case, it is said that the effect of *St.* 1799, *c*. 31, was, that the whole power of laying out both high-ways and town ways, which by the general laws of the Com-monwealth is vested in other bodies, was vested, in Boston, ex-clusively in the selectmen ; and this has since been transferred to the mayor and aldermen. The construction of *St.* 1821, *c*. 110, § 13, was a subject of consideration by this court in the case of *Parks* v. *City of Boston*, 8 Pick. 218, where it was held that the power conferred on the mayor and aldermen by this statute, in relation to streets, cannot be considered as of the same nature as that conferred, by the general laws, upon the selectmen of towns. It is, in the language of the court, said to be " a power similar to that vested in county commissioners of highways." The broad distinction is stated between the power vested in the mayor and aldermen and that vested in the select-men of towns ; " as such selectmen have only the power to lay out town ways, but not to establish them, that being done by the authority of the town." And it was further held, that a *certio-rari* would lie to remove the proceedings of the mayor and al-dermen in the case of laying out streets.

Under this state of the law as to the authority to lay out streets, upon the enacting of the revised statutes, certain special provisions were made for the county of Suffolk, which are found in *c*. 24, §§ 54, 55. In § 54, it is provided that the mayor and aldermen of the city of Boston shall, within the said city, have the like powers and perform the like duties, as are exer-cised and performed by the commissioners of other counties in respect to the laying out, altering and discontinuing of ways, and assessing damages therefor, except as is provided for in the fol-lowing section, which (§ 55) provides that the damages may be settled by a jury at the bar of the court of common pleas, if

the party aggrieved shall petition therefor within one year after the laying out, altering or discontinuing of any way.

The powers and duties exercised by the commissioners in other counties, in respect to the laying out of ways, are fully stated in Rev. Sts. *c.* 24. By § 1 of that chapter, it is provided that application to the commissioners shall be made by petition ; and by § 2, that the commissioners shall cause a copy of said petition to be served upon the clerk of any town, within which such new highway or alteration is prayed for, thirty days before the time appointed for the view or hearing ; and that they shall cause copies of such petition, or abstracts, containing the substance thereof, to be posted in two public places in each of said towns, and shall give notice to all persons interested, by causing a like copy to be published three weeks successively in such newspaper as they shall order ; such posting, and the last publication of said copy, to be fourteen days at least before any view, hearing, or adjudication on such petition. The authority of the mayor and aldermen to lay out and widen streets must therefore be found either in the Rev. Sts. *c.* 24, § 54, just cited, or in *St.* 1821, *c.* 110, § 13, and the various acts to which that statute refers. Whether the powers, conferred upon the mayor and aldermen by *St.* 1821, *c.* 110, were intended to be annulled by the provisions of the revised statutes, and the future proceedings to be wholly directed by them, or to what extent they modified the former laws, or how far *c.* 15, § 86, has secured to the city of Boston all the rights it acquired under the city charter, it is not necessary to decide ; as it seems to us, whether the proceedings by the mayor and aldermen, in extending Fulton Street, were under the authority of the one or the other of these statutes, it would have been alike required that reasonable notice should have been given to the petitioner, or to those who acted in his behalf, before taking his land and buildings, and appropriating them to public use. Such a rule seems founded in the principles of natural justice, and is certainly to be enforced by the judicial authorities, when required by statute enactments. If the whole authority for the laying out and widening of the streets of this city is now given by the revised

statutes, they require notice and prescribe the mode in which such notice is to be given. Whether those requisitions, not adapted to the case of streets in this city—such as the notice to be filed in the office of the town clerk, (which seems useless when the city authorities are the parties ordering notice,)—are to be regarded, may be very questionable. But those provisions securing notice to the public, and to those individuals whose interests may be affected, are as applicable to the city of Boston as to other places.

If, on the other hand, the power of the mayor and aldermen on this subject is derived from *St.* 1821, *c.* 110, § 13, vesting in them all the powers and duties theretofore exercised by the selectmen of Boston, we have seen that, in the various cases before this court, it has been held that their authority to act in this matter much more resembles that of county commissioners, than that appertaining to the selectmen of towns.

But if the right to locate or widen streets in the city of Boston is acquired under the power conferred upon the mayor and aldermen, as succeeding to the authority formerly exercised by the selectmen of towns ; and if this authority may be exercised without any other preliminary proceedings than are requisite in the case of the location of town ways by selectmen ; it will not aid the respondents in sustaining their proceedings in the present case.

Prior to the year 1835, it had been a vexed question, whether the selectmen of a town were bound to give notice, before proceeding to locate a town way ; and the practice, to some extent, and perhaps the more general practice, was, to omit giving such previous notice ; it being supposed that inasmuch as such location of a town way was not established until sanctioned by a vote of the town, acting upon an article inserted in the warrant for calling a town meeting, notice would in this way be effectually given to all persons interested. But by *St.* 1835, *c.* 122, the selectmen were required to give notice to those interested, before proceeding to locate a town way ; and the provisions of this statute are incorporated in the Rev. Sts *c.* 24, § 67.

It seems therefore very clear, that if the facts stated in the petition for a *certiorari* are in conformity with the record, the proceedings have been erroneous, and, upon being certified to this court, they must be quashed ; it being the duty of the mayor and aldermen, in such cases, to give notice to the parties in interest, that they may be heard upon the question of the expediency of locating the proposed street, as well as that they may have the opportunity, if not satisfied with the amount of damages awarded them, of applying, within one year thereafter, for a jury to revise the subject of damages, agreeably to Rev. Sts. *c.* 24, § 55.

The remaining inquiry is, whether there are any facts shown in this case, that should induce the court to deny the petitioner his prayer for a writ of *certiorari.*

A petition for *certiorari* is addressed to the sound discretion of the court.    It is not to be granted for the mere purpose of enabling a party to avoid the proceedings of an inferior tribunal, for technical errors.    It must appear that manifest injustice has been done to the petitioner, and also that there has been no laches on his part, which should operate as a waiver of his right to ask the interposition of the court in his behalf.    As to the subject of notice, for example ; although it should appear that the statute requisitions had not been in terms complied with, yet if it could be shown that the party affected by the proceedings had in fact notice, although in another form, and through a different channel, the court would not grant a *certiorari.*    And so with regard to the time of taking exceptions to the legality of the proceedings in other respects ; the party is not to lie by and see great expenditures made, knowing a defect in the forms of the proceedings, and subsequently be allowed to avail himself of a *certiorari* to quash them as erroneous.

Hence the court will, in cases like the present, allow the respondents to introduce evidence to show that the proceedings ought to be sustained, and that the court may properly refuse the petition for *certiorari*, upon grounds similar to those just alluded to.    The respondents have introduced evidence for this purpose, but have, as we think, failed to sustain this ground of

defence.   As to the fact of actual notice received by the petitioner, or his legal representative, the evidence is altogether insufficient.   It discloses no notice to the guardian until after the adjudication by the mayor and aldermen, ordering the location of the street.

That substantial damage will be sustained by the petitioner by permitting this adjudication to remain in full force, is manifest from the fact that no damages were awarded to him for the estate taken from him, and that he has no mode of enforcing his claim for them, except by the proceeding under this petition.  Nor do we think there has been any such laches on the part of the petitioner, in taking the exceptions to these proceedings of the mayor and aldermen, as should deprive him of his writ of *certiorari*.

Upon the whole matter, the court, being of opinion that this petition is well sustained, order a writ of *certiorari* to be issued.